*292 Vacated and remanded by published opinion. Judge DAVIS wrote the opinion, in which Judge KEENAN joined. Judge AGEE wrote an opinion concurring in part, dissenting in part, and concurring in the judgment.
OPINION
DAVIS, Circuit Judge:
Under federal law, states participating in the Medicaid program are obligated (with some exceptions) to seek reimbursement from third-party tortfeasors for health care expenditures made on behalf of Medicaid beneficiaries who are tort victims. At the same time, however, states are prohibited (with some exceptions) from seeking reimbursement “from the personal property of’ Medicaid beneficiaries themselves for health care expenditures made on behalf of those beneficiaries. But what if the injured Medicaid beneficiary obtains a judgment against (or enters into a settlement agreement with) the tortfeasor? Under such circumstances, what constraints are imposed as to how the state may satisfy its mandatory claim for reimbursement? In Arkansas Department of Health & Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), the Supreme Court provided considerable guidance in resolving this tension in the Medicaid law. The instant appeal requires us to apply the teachings of Ahlbornn to the Medicaid program as it is administered in North Carolina.
The minor appellant, E.M.A., sustained serious injuries at birth due to the negligence of the medical professionals who attended to her delivery. As a result of E.M.A.’s injuries, the North Carolina Department of Health and Human Services (“DHHS”), through the state Medicaid program, paid more than $1.9 million in medical and health care expenses on her behalf. Meanwhile, E.M.A., through her guardian ad litem, and her parents, Sandra and William Earl Armstrong, individually (hereafter “Appellants”), instituted a medical malpractice action in state court. In due course, they settled the action for a lump sum of approximately $2.8 million (a sum in excess of the total Medicaid expenditures of approximately $1.9 million but well below the full value of all the tort claims). The settlement agreement did not allocate separate amounts for past medical expenses and other damages.
DHHS subsequently asserted a statutory lien on the settlement proceeds pursuant to N.C. Gen.Stat. §§ 108A-57 and-59 (referred to herein as “the North Carolina third-party liability statutes”), which provide that North Carolina has a subrogation right to, and may assert a lien upon, the lesser of its actual medical expenditures or one-third of the Medicaid recipient’s total recovery. Thus, under the circumstances described, where DHHS’s actual medical expenditures are greater than one-third of the settlement funds, the North Carolina third-party liability statutes effect an unrebuttable presumption that the state is entitled to one-third of the total settlement proceeds recovered by E.M.A. and her parents. This amount, $933,333.33 (one-third of the $2.8 million lump-sum settlement), has been paid into the registry of the state court, where the funds have remained during the pendency of this action. The parties before us do not dispute the state’s entitlement to some reimbursement from the lump-sum settlement, but they vigorously dispute the proper allocation of the portion of the settlement proceeds held in trust by the state court.
Appellants brought this action in federal district court against Lanier M. Cansler, in his official capacity as Secretary of DHHS, seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. They sought to forestall payment of the amount *293 claimed by DHHS on the basis of the provision of the federal Medicaid law known as the “anti-lien provision,” 42 U.S.C. § 1396p. On cross-motions for summary judgment, the district court, relying in significant part on the reasoning of a majority opinion in a prior case by a divided Supreme Court of North Carolina which distinguished Ahlborn while sustaining the state statutory regime, granted summary judgment in favor of Appellee, Secretary Cansler. Appellants filed this timely appeal.
For the reasons set forth within, we disagree, respectfully, with the analysis of the Supreme Court of North Carolina, as adopted by the district court. Rather, in agreement with one of our sister circuit courts analyzing an analogous state law, we are persuaded that the unrebuttable presumption inherent in the one-third cap on the state’s recovery imposed by the North Carolina third-party liability statutes is in fatal conflict with federal law. Accordingly, we vacate the judgment in favor of the Secretary and remand this action for further proceedings consistent with this opinion.
I
A
E.M.A. was born on February 25, 2000 with injuries that necessitated substantial medical treatment. As a result of the injuries she suffered at birth, E.M.A. is legally deaf and blind, and she is unable to sit, walk, crawl, or talk. Additionally, E.M.A. suffers from mental retardation and a seizure disorder. She requires between 12 and 18 hours of skilled nursing care per day. Sandra Armstrong, E.M.A.’s mother, applied for Medicaid benefits on behalf of E.M.A. on April 26, 2000. The North Carolina Medicaid program is administered by the Division of Medical Assistance (“DMA”) of DHHS pursuant to N.C. Gen.Stat. § 108A-54 and 42 U.S.C. §§ 1396-1396v. In the application for Medicaid coverage for E.M.A., Sandra Armstrong agreed
to give back to the State any and all money that is received by me or anyone listed on this application from any insurance company for payment of medical and/or hospital bills for which the Medical Assistance program has or will make payment. In addition, I agree that all medical payments or medical support paid or owed due to a court order for me or anyone listed on this application must be sent to the State to repay past or current medical expenses paid by the State. This includes insurance settlements resulting from an accident. I further agree to notify the county department of social services if I or anyone listed on this application is involved in any accident.
J.A. 82, ¶ 2.
On February 21, 2003, E.M.A. and her parents filed a lawsuit in Catawba County Superior Court alleging claims for medical malpractice. The malpractice suit sought damages on behalf of E.M.A. for her physical and developmental injuries, lost wages, pain and suffering, and future medical expenses starting at her majority. Sandra and William Earl Armstrong sought damages for past medical expenses for E.M.A.’s care and treatment, medical expenses through E.M.A.’s eighteenth birthday, and damages for their own emotional distress.
After three years of litigation, the parties settled the medical malpractice case. Prior to consummating the settlement, Appellants were aware that DHHS had paid more than $1.9 million for the costs of E.M.A.’s medical care. Appellants contend that they gave notice of the settlement negotiations and of the mediation *294 process to DHHS pursuant to Rule 4B of the North Carolina Rules for Mediated Settlement Conference, but no representative of DHHS ever participated in or attended the settlement discussions.[1]
On November 13, 2006, Judge Timothy Kincaid held a hearing in the Catawba County Superior Court to review the fairness and appropriateness of the settlement. Appellants allege they served DHHS with notice of the hearing, but no representative of DHHS appeared. The court approved the settlement, finding that it was fair and just, in the best interest of E.M.A., and in all respects reasonable and proper. The court likewise found the settlement to be fair in all respects as to Sandra and William Earl Armstrong, and that their individual claims had been resolved by the settlement, “including, but not limited to, claims for severe emotional distress and mental anguish and liability for past, present and future medical and life care expenses.” J.A. 134. Judge Kincaid noted that the plaintiffs had alleged that “[E.M.A.] suffered severe and permanent injuries and that both parents ... have incurred liability for past, present and future medical and life care expenses for treatment of [E.M.A.],” J.A. 133, and concluded that the sums set out in the Settlement Schedule were fair and just compensation for their respective claims, J.A. 135.
Notably, neither the parties to the settlement nor the court allocated the settlement funds among the distinct claims or categories of damages. To be sure, however, Judge Kincaid recognized that DHHS had asserted a lien against the proceeds of the settlement, but for reasons not addressed by the parties before us, he apparently was not asked and/or declined to adjudicate the proper amount of the DHHS lien. Rather, he found simply that “the amount of that lien needs to be determined in light of the U.S. Supreme Court decision in [Ahlborn ],” J.A. 136, which had been decided approximately six months earlier during the pendency of the state medical malpractice litigation. Accordingly, the court ordered that the maximum potential lien amount, as set out in the Settlement Schedule and as provided in N.C. Gem.Stat. § 108A-57(a), should be paid into an interest bearing account in the Catawba County Clerk of Court’s Office until such time as the actual amount of the DHHS lien was conclusively determined. Although the Settlement Schedule was filed under seal and is not part of the appellate record in this ease, it is undisputed that the amount held in the Catawba County Clerk of Court’s Office is $933,333.33, which represents one-third of the total lump-sum settlement paid to E.M.A. and her parents in resolution of the medical malpractice action.
B
On March 23, 2007, E.M.A. filed this suit in the United States District Court for the Western District of North Carolina under 42 U.S.C. § 1983 seeking declaratory and injunctive relief. She alleged a deprivation of her rights as secured by 42 U.S.C. § 1396p (the federal Medicaid anti-lien provision, discussed infra) and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, § 1, cl. 2. In her complaint, E.M.A. requested a declaratory judgment finding that: (1) DHHS does not have a lien on the proceeds paid on her behalf in settlement of the medical malpractice action or, in the *295 alternative, determining the amount of the lien; (2) the North Carolina third-party liability statutes are unconstitutional under the federal Supremacy Clause, U.S. Const. art. VI, cl. 2, to the extent the statutes allow DHHS to assert a lien on settlement funds paid in lieu of damages for claims other than medical expenses; and (3) DHHS be enjoined from enforcing the North Carolina third-party liability statutes in a manner that violates 42 U.S.C. §§ 1396-1396v, Ahlborn, and the Equal Protection Clause.[2]
The Secretary filed certain preliminary motions, which the district court granted in part and denied in part, without prejudice. E.M.A.’s parents were joined as plaintiffs by consent. Thereafter, the district court stayed the action pending final review in the North Carolina Supreme Court of Andrews v. Haygood, 362 N.C. 599, 669 S.E.2d 310 (2008), cert. denied sub nom. Brown v. North Carolina Department of Health and Human Services, — U.S. -, 129 S.Ct. 2792, 174 L.Ed.2d 291 (2009), a state-court appeal challenging the enforceability of the North Carolina third-party liability statutes under circumstances materially indistinguishable from the circumstances present in this case.
After the North Carolina Supreme Court sustained the North Carolina third-party liability statutes in Andrews, 669 S.E.2d 310, the parties filed cross-motions for summary judgment. The district court concluded that, based upon the North Carolina Supreme Court’s reasoning in Andrews and its own independent analysis, the North Carolina third-party liability statutes are consistent with federal Medicaid law as interpreted in Ahlborn. Having reached this conclusion of law and finding no genuine dispute of material fact remaining, the district court denied E.M.A.’s motion for summary judgment, granted the Secretary’s motion for summary judgment, and dismissed E.M.A.’s case with prejudice, thereby entitling the Secretary to $933,333.33, the full amount held in trust by the state court. E.M.A., through her guardian ad litem, together with her parents, timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.
II
The outcome of the instant appeal turns upon our application of federal Medicaid law, as interpreted by the Supreme Court in Ahlborn, to North Carolina’s statutory scheme for third-party liability, in light of the particular undisputed facts of this case involving a lump-sum personal injury settlement recovered by a minor child. We review de novo the district court’s grant of summary judgment. Purdham v. Fairfax Cnty. Sch. Bd., 637 F.3d 421, 426 (4th Cir.2011). Similarly, “[t]he district court’s analysis of the statutes in the instant case presents questions of law which we review de novo,” WLR Foods, Inc. v. Tyson Foods, Inc., 65 F.3d 1172, 1178 (4th Cir.1995), cert. denied, 516 U.S. 1117, 116 S.Ct. 921, 133 L.Ed.2d 850 (1996), including, of course, its analysis of the Appellants’ Supremacy Clause challenge. See Sheehan v. Peveich (In re Peveich), 574 F.3d 248, 252 (4th Cir.2009).
E.M.A. and her parents argue on appeal that DHHS’s lien against E.M.A.’s portion of the settlement proceeds violates federal Medicaid law because the lien encumbers funds that are not payment for medical expenses already incurred. Although the medical malpractice settlement was not allocated among categories of damages, E.M.A. asserts that her portion of the proceeds necessarily does not include reimbursement for medical care because a minor has no cause of action to *296 recover past medical expenses under North Carolina common law. In the alternative, Appellants argue that “the proportional analysis undertaken in Ahlborn should be applied to this case,” and that this court should vacate and remand for an evidentiary hearing to determine the proper amount of the state’s lien. Br. of Appellants at 25.
The Secretary responds, citing to the North Carolina Supreme Court’s majority opinion in Andrews, that the district court correctly held that the North Carolina third-party liability statutes, N.C. Gen. Stat. §§ 108A-57 and -59, are consistent with federal Medicaid law as construed in Ahlborn. The Secretary further asserts that, having made this determination, the district court was not required to rule on the applicability of North Carolina common law to the federal and state statutes because the statutes abrogate the common law. Finally, the Secretary argues that Ahlborn does not support E.M.A.’s alternative theory of proportional analysis for reducing the state’s Medicaid lien.
For the reasons set forth herein, although we agree that common law principles play no role in the circumstances presented in this case, we are persuaded that Appellants have the better of the argument with respect to federal law as explicated in Ahlborn. E.M.A.’s argument that DHHS cannot assert a lien against her portion of the settlement funds because a minor cannot recover for past medical expenses under North Carolina common law fails because the state statutes at issue clearly abrogate the common law. Nevertheless, we shall vacate the judgment because the North Carolina third-party liability statutes, N.C. Gen.Stat. §§ 108A-57 and -59, as applied in this case, fail to comply with federal Medicaid law as interpreted by the Supreme Court in Ahlborn. As the unanimous Ahlborn Court’s decision makes clear, federal Medicaid law limits North Carolina’s recovery to settlement proceeds representing payment for medical expenses. In the event of a lump-sum settlement, as in this case, the sum certain allocable to medical expenses must be determined, in the absence of a stipulation by the affected parties, by judicial determination or some similar adversarial process, before the state may recoup its Medicaid outlays. Accord Tristani ex rel. Karnes v. Richman, 652 F.3d 360, 377-78 (3d Cir.2011) (interpreting Pennsylvania law).
Ill
A
We begin with a summary of the relevant provisions of federal law. The Medicaid program, launched in 1965 with the enactment of Title XIX of the Social Security Act, as added, 79 Stat. 343, 42 U.S.C. §§ 1396-1396v, is a cooperative program by which the federal government pays a percentage of the costs a state incurs for medical care for individuals who cannot afford to pay their own medical costs. Ahlborn, 547 U.S. at 275, 126 S.Ct. 1752. Although states are not required to provide Medicaid assistance, all 50 states currently do. Id. In exchange for receiving federal financial support for state-run Medicaid programs, states must comply with federal Medicaid laws, including statutory third-party liability requirements, 42 U.S.C. §§ 1396a(a)(25)(A), (B), (H); 1396k, and anti-lien provisions, id. §§ 1396a(a)(18), 1396p. In order to comply with requirements in federal Medicaid law, North Carolina has enacted its own third-party liability statutes, comprised of an assignment statute, N.C. Gen.Stat. § 108A-59, and a subrogation statute, N.C. Gen.Stat. § 108A-57. See infra p. 298. *297 States providing Medicaid assistance must comply with several provisions concerning third-party liability. For instance, states are required to “take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the [State’s Medicaid] plan.” 42 U.S.C. § 1396a(a)(25)(A). In addition to this identification requirement, the state agency administering the Medicaid program (here DHHS) must seek reimbursement for medical assistance to the extent of such legal liability. Id. § 1396a(a)(25)(B). In order to secure its reimbursement from liable third parties, the state must,
to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, [have] in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services.
Id. § 1396a(a)(25)(H). Consistent with this provision, as a condition to receiving state medical assistance, individuals are required
to assign the State any rights, of the individual or of any other person who is eligible for medical assistance under this title [42 USCS §§ 1396 et seq.] and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party.
Id. § 1396k(a)(1)(A). Federal Medicaid law further provides that “any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of’ the Medicaid recipient. Id. § 1396k(b). Any funds remaining after the state and federal Medicaid programs are reimbursed are then paid to the recipient. Id.
Although participating states are required under federal Medicaid law to seek recovery from liable third parties, as set forth above, “the federal statute places express limits on the State’s powers to pursue recovery of funds it paid on the recipient’s behalf.” Ahlborn, 547 U.S. at 283, 126 S.Ct. 1752. These limitations are contained in 42 U.S.C. §§ 1396a(a)(18) and 1396p. Section 1396a(a)(18) provides that a state plan for medical assistance must comply with § 1396p, which in turn prohibits states from imposing liens against, or seeking recovery of benefits paid from, a Medicaid recipient. Subsection 1396p(a) prohibits imposition of a lien “against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan.” Subsection 1396p(b) further provides that “no adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made.”[3]
The Supreme Court has characterized the third-party liability provisions in federal Medicaid law as an exception to the anti-lien provisions, stating that “[t]o the extent that the forced assignment [of payments that constitute reimbursement for medical *298 expenses] is expressly authorized in §§ 1396a(a)(25) and 1396k(a), it is an exception to the antilien provision.” Ahlborn, 547 U.S. at 284, 126 S.Ct. 1752 (citing Wash. State Dep’t of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 383-85, & n. 7, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003)). At the same time, the Supreme Court has emphasized that this exception is strictly limited — a state cannot force assignment of, or place a lien on, any property that does not constitute reimbursement for medical expenses. Id. at 284-85, 126 S.Ct. 1752 (“[T]he exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies”).
B
Next, we outline the state law provisions that are relevant to this case. As noted above, North Carolina participates in the federal Medicaid program, and DHHS is the North Carolina regulatory body charged with establishing and administering the Medicaid program throughout the state in accordance with Title XIX of the federal Social Security Act, 42 U.S.C. §§ 1396-1396v. N.C. Gen.Stat. § 108A-54. In order to comply with the federal third-party liability requirements discussed supra, North Carolina has enacted an assignment statute, id. § 108A-59, and a subrogation statute, id. § 108A-57. Section 108A-59(a) provides that, “Notwithstanding any other provisions of the law, by accepting medical assistance, the recipient shall be deemed to have made an assignment to the State of the right to third party benefits, contractual or otherwise to which [the recipient] may be entitled.” Implementation of the recipient’s statutory assignment is governed by § 108A-57(a), the subrogation statute, which provides:
Notwithstanding any other provisions of the law, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance, or of the beneficiary’s personal representative, heirs, or the administrator or executor of the estate, against any person ... Any attorney retained by the beneficiary of the assistance shall, out of the proceeds obtained on behalf of the beneficiary by settlement with, judgment against, or otherwise from a third party by reason of injury or death, distribute to the Department the amount of assistance paid by the Department on behalf of or to the beneficiary, as prorated with the claims of all others having medical subrogation rights or medical liens against the amount received or recovered, but the amount paid to the Department shall not exceed one-third of the gross amount to be retained or recovered.
Accordingly, under the state’s third-party liability statutes, North Carolina has a subrogation right to, and may assert a lien upon, the lesser of its actual medical expenditures or one-third of the Medicaid recipient’s total recovery.[4] See id.
*299 With commendable candor, the Secretary concedes that the statutory presumption that the state’s recovery of one-third of an unallocated lump-sum tort settlement is fair and appropriate rests on nothing more than the state’s notion of “how attorneys and insurance adjusters typically value tort cases.” See Br. of Appellee at 16 (citing and quoting Dorsey D. Ellis, Jr., Fairness and Efficiency in the Law of Punitive Damages, 56 Cal. L.Rev. 1, 58 n. 248 (1982) (“[T]hree times the special damages is often used as a rule of thumb for settling personal injury claims. See H. Ross, Settled Out of Court 108 (1970).”)). The question posed by this appeal is whether the state’s mere interest in “efficiency” is sufficient to satisfy the federal anti-lien provision. We hold that it is not.
C
(1)
The interplay among the above-described federal and state legal principles creates a measure of tension. In Ahlborn, the Supreme Court reconciled seemingly conflicting legal standards when it considered whether an Arkansas third-party liability statute permitting the state to claim a right to the entirety of the costs it paid on a Medicaid recipient’s behalf, regardless of whether that amount exceeded the portion of the recipient’s judgment or settlement representing past medical expenses, violated federal Medicaid law. 547 U.S. at 278, 126 S.Ct. 1752. In an opinion by Justice Stevens for a unanimous Court, Ahlborn held that Arkansas’ assertion of a lien on a Medicaid recipient’s tort settlement in an amount exceeding the stipulated medical-expenses portion was not authorized by federal Medicaid law; to the contrary, the state’s attempt to do so was affirmatively prohibited by the general anti-lien provision in 42 U.S.C. § 1396p. Id. at 292,126 S.Ct. 1752.
For the purposes of our analysis in the instant appeal, the facts of Ahlborn are highly instructive. Following Heidi Ahlborn’s car accident with allegedly negligent third parties, the Arkansas Department of Health and Human Services (“ADHHS”)[5] determined that she was eligible for Medicaid and paid providers $215,645.30 on her behalf. Id. at 273, 126 S.Ct. 1752. She filed a state-court suit against the alleged tortfeasors seeking damages for past medical costs and for other items, including pain and suffering, loss of earnings and working time, and permanent impairment of her future earning ability. Id. ADHHS intervened in Ahlborn’s lawsuit to assert a lien on the proceeds of any third-party recovery she might obtain. Id. at 274, 126 S.Ct. 1752. The case was settled for a lump sum of $550,000, which was not allocated between her various claims. Id. ADHHS did not participate or ask to participate in the *300 settlement negotiations, and did not seek to reopen the judgment after the case was dismissed, but did assert a lien against the settlement proceeds for the full amount it had paid for Ahlborn’s care. Id.
Ahlborn filed a declaratory judgment action in federal district court seeking a declaration that the state’s lien violated federal law insofar as its satisfaction would require depletion of compensation for her injuries other than past medical expenses. See Ahlborn v. Ark. Dep’t of Human Servs., 280 F.Supp.2d 881 (E.D.Ark.2003). Notably, the parties stipulated that the settlement amounted to approximately one-sixth of the reasonable value of Ahlborn’s claim and that, if her construction of federal law was correct, ADHHS would be entitled to only the prorated portion of the settlement that constituted reimbursement for medical payments made ($35,-581.47, or one-sixth of $215,645.30, the full amount paid by ADHHS for her medical expenses related to the car accident). Id. at 883.
Ruling on cross-motions for summary judgment, the district court held that under Arkansas law, which it concluded did not conflict with federal law, Ahlborn had assigned to ADHHS her right to any recovery from the third-party tortfeasors to the full extent of Medicaid’s payments for her benefit. Id. at 888. Accordingly, ADHHS was entitled to a lien in the full amount of $215,645.30. The Eighth Circuit reversed, holding that ADHHS was entitled only to that portion of the settlement that represented payments for medical care. Ahlborn v. Ark. Dep’t of Human Servs., 397 F.3d 620, 628 (8th Cir.2005). ADHHS sought further review in the Supreme Court, which granted certiorari and affirmed the Eighth Circuit. Ahlborn, 547 U.S. at 292, 126 S.Ct. 1752.
The Supreme Court held that Arkansas’ third-party liability lien attached only to the portion of Ahlborn’s settlement that was designated by stipulation for past medical expenses paid by Medicaid, or $35,581.47. Id. The Court found that the remainder of ADHHS’s claim could not be asserted against the balance of the settlement proceeds. Id. at 280-81, 126 S.Ct. 1752. The Court reasoned that the anti-lien provisions in the federal Medicaid statutes, 42 U.S.C. §§ 1396a(18) and 1396p, must be interpreted in view of 42 U.S.C. §§ 1396a(a)(25) and 1396k(a), which provide that states shall require individuals, as a condition to receiving state medical assistance, to assign the state any rights the individual may have “to payment for medical care from any third party,” 42 U.S.C. § 1396k(a)(1)(A). Id. at 283-84, 126 S.Ct. 1752. The Court explained that
there is no question that the State can require an assignment of the right, or a chose in action, to receive payments for medical care ... The State can also demand ... that the recipient “assign” in advance any payments that may constitute reimbursement for medical costs ... As long as the assignment rights are authorized under 42 U.S.C. §§ 1396a(a)(25) and 1396k(a), such assignments are considered exceptions to the anti-lien provision.
Id. at 284, 126 S.Ct. 1752. The Court concluded that the federal third-party liability provisions require an assignment of no more than the right to recover the portion of the settlement proceeds which are designated for past medical bills paid by Medicaid, id. at 282, 126 S.Ct. 1752, and that the federal anti-lien provision prohibits state Medicaid programs from asserting a third-party liability claim against a Medicaid beneficiary’s settlement or judgment for personal injury damages other than medical expenses, id. at 286, 126 S.Ct. 1752.
*301 (2)
In Andrews, 669 S.E.2d 310, upon which the district court below heavily relied, the North Carolina Supreme Court rejected, by a 4-3 vote, a Supremacy Clause challenge to N.C. Gen.Stat. §§ 108A-57 and - 59, concluding over a vigorous dissent that the North Carolina third-party liability statutes did not run afoul of the Supreme Court’s interpretation of federal Medicaid law in Ahlborn. We believe it useful to review in some detail the course of legal developments in the state courts.
In Ezell v. Grace Hospital, Inc., 175 N.C.App. 56, 623 S.E.2d 79 (2005), a pre-Ahlborn ease, the North Carolina Court of Appeals held that § 108A-57(a) requires reimbursement only to the extent of the third party’s legal liability for injuries resulting in medical care paid by Medicaid, effectively vitiating the impact of the one-third-of-settlement provision. 623 S.E.2d at 83. Judge Steelman concurred in part and dissented in part, reasoning that “[DHHS’s] right of subrogation under N.C. Gen.Stat. § 108A-57(a) is broad rather than narrow,” and finding that the state was entitled to full satisfaction of its lien under North Carolina law. Id. at 63-64, 623 S.E.2d 79 (Steelman, J., concurring in part and dissenting in part) (concluding that DHHS was subrogated to the entire amount of the settlement, subject only to the one-third limitation found in § 108A-57(a), irrespective of whether some of the settlement amount was intended to account for pain and suffering and not medical damages).
Judge Steelman’s dissent provided an automatic appeal to the North Carolina Supreme Court under N.C. R.App. P. 14(b)(1), and eventually served as the basis for a summary reversal when, on appeal, the North Carolina Supreme Court reversed the Court of Appeals and adopted Judge Steelman’s dissent by per curiam opinion. Ezell v. Grace Hosp., Inc., 360 N.C. 529, 631 S.E.2d 131 (2006), rev’g per curiam for reasons stated in the dissenting opinion, 175 N.C.App. 56, 623 S.E.2d 79 (2005). Curiously, although the North Carolina Supreme Court decided Ezell on June 30, 2006, it made no mention of Ahlbom, which the United States Supreme Court had decided two months earlier on May 1, 2006. Moreover, on December 14, 2006, the North Carolina Supreme Court summarily denied a petition for rehearing in Ezell pursuant to N.C. R.App. P. 31, which set out arguments based on Ahlborn. Ezell v. Grace Hosp., Inc., 641 S.E.2d 4 (N.C.2006).
Then, not long afterwards, in Andrews v. Haygood, 188 N.C.App. 244, 655 S.E.2d 440 (2008), the North Carolina Court of Appeals once again considered whether, in an action to determine the proper amount of a Medicaid lien on a medical malpractice settlement, the trial court erred in concluding that the North Carolina Supreme Court’s decision in Ezell was controlling, and the United States Supreme Court’s decision in Ahlborn was not. Andrews, 655 S.E.2d at 441-42. The intermediate appellate court concluded that Ezell was binding, id. at 442, and that since the North Carolina Supreme Court decided Ezell after Ahlborn was decided, and subsequently denied the petition for rehearing, the North Carolina Supreme Court had understood Ahlborn to have no effect on North Carolina’s third-party liability statutes, id. at 443. The North Carolina Court of Appeals reasoned that, “[although we recognize that the Arkansas statute discussed in Ahlborn is similar to [N.C. Gen.Stat. § 108A-57(a) ], it is well settled that the construction of the statutes of a state by its highest courts is to be regarded as determining their meaning.” Id. (internal citations and quotation marks omitted).
*302 Judge Wynn, then a member of the North Carolina Court of Appeals, disagreed with the majority in Andrews, concluding that the North Carolina Supreme Court had not yet squarely answered the question presented in the case, and therefore “certif[ied] by dissent for a decision on the issue of whether the amount of State Division of Medical Assistance’s subrogation on a Medicaid recipient’s settlement is controlled by the United States Supreme Court’s decision in [Ahlborn]” Id. at 444 (Wynn, J., dissenting). Judge Wynn noted that the state supreme court’s reversal of the North Carolina Court of Appeals’ decision in Ezell was explained only as “for the reasons stated in the dissenting opinion,” that the dissenting opinion adopted by the supreme court had neither considered nor mentioned Ahlborn, and that the Supreme Court denied the motion for rehearing in Ezell with one word: “Denied.” Id. (internal citations and quotation marks omitted).
Judge Wynn’s dissent further emphasized that “the North Carolina statute at issue in [Andrews ] is materially indistinguishable from the Arkansas statutory provisions found by a unanimous United States Supreme Court in Ahlborn to be preempted by federal law.” Id. Judge Wynn reasoned,
The principal difference between the North Carolina and Arkansas statutes is that the latter provides no ceiling or limit on the amount of recovery allowed to the ADHS; rather, the statute explicitly stated that ADHS was entitled to recover the full amount of the benefits paid to the recipient.... North Carolina, by contrast, allows DMA to take at most one-third of the gross amount of the settlement, regardless of whether that fully satisfies the amount paid in medical benefits.... Nevertheless, the basic thrust of the statutes is the same: under both, the State has an automatic lien on the full amount of any settlement with a third party reached by a Medicaid settlement, regardless of what expenses or damages those funds are designated to compensate.
Id. at 445. Accordingly, Judge Wynn concluded that “the Arkansas statute — and likewise, our North Carolina statute — conflicts with federal Medicaid statutes by allowing the State to recover from a recipient settlement funds that were for purposes other than medical expenses.” Id. He explained that because the settlement at issue in Andrews, unlike the settlement in Ahlborn, was not allocated as to particular claims, “the holding of Ahlborn dictates that the trial court must hold an evidentiary hearing as to what portion of the settlement is designated for medical expenses prior to determination of the amount of repayment to be made to DMA.” Id. at 446.
Upon further appellate review, the North Carolina Supreme Court considered “whether the statutory framework governing the State’s subrogation claim for medical expenses on a Medicaid recipient’s tort claim settlement complies with federal Medicaid law as interpreted by the Supreme Court of the United States in [Ahlborn].” Andrews, 669 S.E.2d at 311. The appellant trustee of the settlement account argued that, absent an agreement between the parties, federal law requires a judicial determination of the portion of a tort claim settlement that represents the recovery of medical expenses. Id. at 312. In response, the state contended that the statutory one-third limiting provision complies with Ahlborn’s interpretation of federal Medicaid law, and that judicial apportionment of medical expenses from the settlement was therefore not required. Id. The North Carolina Supreme Court agreed with the state and affirmed the Court of Appeals, stating that “[b]ecause Ahlborn *303 does not mandate a specific method for determining the medical expense portion of a plaintiffs settlement, we uphold North Carolina’s reasonable statutory scheme.” Id. at 311.
Thus, when it finally confronted the issue of Ahlborn’s effect on the North Carolina third-party liability statutes, the North Carolina Supreme Court read Ahlborn narrowly and concluded that it “controls [only] when there has been a prior determination or stipulation as to the medical expense portion of a plaintiffs settlement. In those cases, the State may not receive reimbursement in excess of the portion so designated.” Id. at 313. The court further emphasized that “the Ahlborn holding, limited by the parties’ stipulations, did not require a specific method for determining the portion of a settlement that represents the recovery of medical expenses.” Id. Noting that Ahlborn recognized that some states have adopted “special rules and procedures” for allocating tort settlements under such circumstances, but ultimately expressed no view on the matter, the Andrews court determined that “Ahlborn thus does not mandate a judicial determination of the portion of a settlement from which the State may be reimbursed for past medical expenses. Instead, the Supreme Court left to the States the decision on the measures to employ in the operation of their Medicaid programs.” Id. (citing Ahlborn, 547 U.S. at 288 n. 18, 126 S.Ct. 1752) (internal quotation marks omitted).
Applying this interpretation of Ahlborn, the North Carolina Supreme Court majority found that “the one-third limitation of section 108A-57(a) thus comports with Ahlborn by providing a reasonable method for determining the State’s medical reimbursements, which it is required to seek in accordance with federal Medicaid law.” Id. at 314 (citing 42 U.S.C. § 1396a(a)(25)(A)-(B)). The United States Supreme Court subsequently denied the plaintiffs petition for certiorari. See Brown, 129 S.Ct. 2792.
In her dissenting opinion in Andrews, Justice Hudson agreed with the majority that Ahlborn does not mandate a specific method for determining the medical expense portion of a plaintiffs settlement, but emphasized that the Ahlborn Court nevertheless did explicitly hold that a state may not violate the anti-lien provisions of 42 U.S.C. §§ 1396a(a)(18) and 1396p by requiring a Medicaid recipient to reimburse it out of settlement funds designated for (or otherwise properly allocable to) purposes other than medical care. Id. at 314 (Hudson, J., dissenting, joined by JJ. Brady and Timmons-Goodson) (internal citations and quotation marks omitted). Justice Hudson ultimately concluded, however, that “the terms of the settlement [in Andrews ] provide[d] insufficient detail to allow [the Andrews court] to determine whether the application of N.C. Gen.Stat. § 108A-57(a) would violate the anti-lien provisions of the federal Medicaid statutes, pursuant to the holding in Ahlborn.” Id.; see also id. at 317 (“[Application of the bright-line rule articulated by the majority in a case like this one, in which there has been no allocation, could allow precisely the result that is explicitly barred by Ahlborn”).
(3)
In the instant case, the district court recognized that Andrews was not binding upon it, but adopted the North Carolina Supreme Court’s legal analysis and holding that the state’s third-party liability statutes comport with federal Medicaid law and Ahlborn. Armstrong v. Cansler, 722 F.Supp.2d 653, 655-58 (W.D.N.C.2010). The district court agreed with the Andrews court’s determination that the Su *304 preme Court’s holding in Ahlborn was “limited to a proscription against the State receiving reimbursement in excess of the portion expressly stipulated as recovery for medical expenses in a Medicaid recipient’s settlement with a third party.” Id. at 656 (emphasis added). The district court further agreed with the Andrews court’s “infer[ence] that a State may adopt a statutory method for [determining the portion of a settlement that represents payment for medical expenses] in the absence of prior judicial allocation,” such as the one-third limitation in N.C. Gen.Stat. § 108A-57(a). Id.
The district court then undertook its own independent analysis of the North Carolina third-party liability statutes, and thereby confirmed its conclusion that there is no conflict between the state’s third-party liability scheme and federal law. Id. at 656-58. The district court determined that North Carolina has complied with the federal requirements that it “take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the [Medicaid] plan” and “seek reimbursement for assistance to the extent of such legal liability” by enacting the State Plan for Medical Assistance, which includes an assignment statute, N.C. Gen.Stat. § 108A-59, and a subrogation statute, N.C. Gen.Stat. § 108A-57. Id. at 657 (quoting 42 U.S.C. § 1396a(a)(25)(A)-(B)). The district court further reasoned that, by preventing the state from recovering more than one-third of a Medicaid recipient’s settlement in the absence of judicial allocation, regardless of whether the state in fact provided more assistance, the North Carolina statutory scheme avoids the conflict at issue in Ahlborn. Id. (finding that the lesser of the state’s past medical expenditure or one-third of the recipient’s total recovery “essentially defines” the portion of the settlement that represents payment for medical expenses in cases involving a lump-sum settlement) (internal citation and quotation marks omitted). Unlike the Arkansas statute at issue in Ahlbom, the district court noted, the North Carolina statute provides a reasonable means of calculating the portion of the settlement agreement representing medical expenses, and then forbids the state from imposing a lien on the remainder of the settlement. Id. Finally, the district court noted that an intermediate appellate court in Florida had recently upheld Florida’s nearly identical statutory scheme, which imposes a fifty-percent cap on the portion of a Medicaid recipient’s award from a third-party tortfeasor that is recoverable by the state where the parties have not allocated medical costs, on the basis that the state’s stipulation concerning the portion of the settlement proceeds attributable to medical expenses was central to the Supreme Court’s reasoning in Ahlborn. Id. at 658 (citing Russell v. Agency for Health Care Admin., 23 So.3d 1266 (Fla.2d Dist.Ct.App.2010)).
IV
A
E.M.A.’s primary argument on appeal is that DHHS’s lien on her settlement proceeds violates the federal anti-lien statute, 42 U.S.C. § 1396p, because she did not recover for past medical expenses.[6] *305 E.M.A. contends that although her lump-sum settlement was not allocated between various claims (either by stipulation or judicial determination), her recovery necessarily does not include reimbursement for past medical expenses because a minor has no cause of action for past medical expenses under North Carolina common law. See Vaughan v. Moore, 366 S.E.2d 518, 520 (1988). Notably, although E.M.A. asserted this argument in her motion for summary judgment, the district court made no mention of this issue in its opinion. The Secretary contends that “[t]he relevant federal and state statutes applicable to Medicaid recipients abrogate the common law and establish the basis for DHHS to recover a portion of the funds paid for medical services provided to the minor child.” Br. of Appellee at 8.
Neither the federal law nor the state law at issue in this case mentions the Medicaid beneficiary’s age or minority status in setting forth third-party liability and assignment requirements. Indeed, the North Carolina assignment statute provides that “[njotwithstanding any other provisions of the law, by accepting medical assistance, the recipient shall be deemed to have made an assignment to the State of the right to third party benefits, ... to which he may be entitled.” N.C. Gen.Stat. § 108A-59(a) (emphases added). Similarly, the North Carolina subrogation statute provides that “[njotwithstanding any other provisions of the law, to the extent of payments under this Part, the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance ...” N.C. Gen.Stat. § 108A-57(a) (emphases added). Thus, with respect to E.M.A., who is both a “recipient” and “beneficiary” of medical assistance, the North Carolina third party liability statutes, N.C. Gen.Stat. §§ 108A-57(a), 59(a), by their plain language abrogate the common law rule that a minor cannot recover for medical expenses. See Campbell v. N.C. Dep’t of Human Resources, 153 N.C.App. 305, 569 S.E.2d 670, 672 (2002) (finding that a minor is a “recipient” of medical assistance under N.C. Gen.Stat. § 108A-25(5), which defines “recipient” as “a person to whom, or on whose behalf, assistance is granted under this Article,” and a “beneficiary” of medical assistance under N.C. Gen.Stat. § 108A-57, pursuant to the plain and definite meaning of the term as commonly used); see also id. (“[Pjlaintiff cites no authority, and we find none, to support his contention that a beneficiary in the meaning of § 108A-57, or a recipient in the meaning of § 108A-59, must be one who receives a direct cash payment or relief from debt, or who has the legal right to bring suit for medical benefits.”).
The North Carolina Court of Appeals considered a distinct but analogous argument in Ezell, 623 S.E.2d 79, in which one of the issues before the court on appeal was whether the trial court committed reversible error in its application of common law principles of equity to the state’s right of subrogation under N.C. Gem.Stat. § 108A-57(a). 623 S.E.2d at 81. The court held that § 108A-57(a) abrogates the *306 equitable principles of common law. Id. at 81-82. The court reasoned that
[i]n matters of statutory construction, this Court must ascertain and effectuate the intent of the legislative body. It is well-established that legislative intent may be determined from the language of the statute, and if a statute is facially clear and unambiguous, leaving no room for interpretation, the courts will enforce the statute as written. We conclude that the plain language of the statute here precludes the application of equitable subrogation principles. We conclude that the legislature specifically abrogated the application of common law principles of equity when it stated that the State “shall be subrogated to all rights of recovery,” “notwithstanding any other provisions of the law.” ... [W]e must enforce the statute as written and if the legislature wishes for common law equitable principles to apply to this statute, it may certainly amend it accordingly.
Id. (internal citations and quotation marks omitted). The Ezell court’s reasoning applies with equal force here.[7] Like the Ezell court, we find that the plain language of the North Carolina assignment and subrogation statutes quoted above demonstrates the North Carolina legislature’s intent “to specifically abrogate! ] the application of [certain] common law principles,” see Ezell, 623 S.E.2d at 81-82, including, as relevant here, the common law rule that a minor has no claim for past medical expenses insofar as it conflicts with the state’s rights of recovery against a third party tortfeasor.[8] See, e.g., Christenbury v. Hedrick, 32 N.C.App. 708, 234 S.E.2d 3, 5 (1977) (“It is well settled that the common law of England is in force in this State to the extent that it is not destructive of, repugnant to, or inconsistent with our form of government, and to the extent that it has not been abrogated or repealed by statute or has not become obsolete; however, when the General Assembly legislates in respect to the subject matter of any common law rule, the statute supplants the common law and becomes the public policy of this State in respect to that particular matter.”) (citation omitted). Accordingly, we hold that, in light of the comprehensive statutory scheme before us, E.M.A.’s share of the settlement proceeds at issue in this case is not shielded from the state’s reimbursement claim by virtue of her minority.[9]
*307 B
(1)
Given that North Carolina common law does not bar DHHS’s lien against E.M.A.’s settlement proceeds, we are faced with the same question considered by the North Carolina Supreme Court in Andrews: Whether North Carolina’s third-party liability statutes comport with federal Medicaid law and Ahlborn merely because the subrogation statute, N.C. Gen. Stat. § 108A-57, “caps” the state’s recovery at the lesser of the actual medical expenses paid or one-third of the total settlement. The North Carolina Supreme Court in Andrews and the district court in this case adopted a narrow interpretation of Ahlborn, limiting its holding to cases in which the parties have stipulated to or otherwise allocated settlement proceeds between different categories of damages, thereby identifying a sum certain for medical expenses. Thus, these decisions are based on the view that Ahlborn is inapplicable in cases involving an unallocated lump-sum settlement, such as the instant matter.
On the contrary, however, nothing in Justice Stevens’s opinion for a unanimous court in Ahlborn supports such a crabbed application of that case. The Ahlborn Court addressed the specific issue of “whether [ADHHS] can lay claim to more than the portion of [the recipient’s] settlement that represents medical expenses.” 547 U.S. at 280, 126 S.Ct. 1752. The Court in no way rested its analysis of this issue on whether there has been a prior determination or stipulation as to the medical expenses portion of a Medicaid recipient’s settlement. Thus, Ahlborn is properly understood to prohibit recovery by the state of more than the amount of settlement proceeds representing payment for medical care already received. The North Carolina statute’s one-third cap on the state’s recovery against a Medicaid recipient’s settlement proceeds does not satisfy Ahlbom insofar as it permits DHHS to assert a lien against settlement proceeds intended (or otherwise properly allocable) to compensate the Medicaid recipient for other claims, such as pain and suffering or lost wages (i.e., in cases where one-third of the recipient’s total settlement recovery is greater than the amount DHHS expended on the recipient’s behalf).[10] See Andrews, *308 669 S.E.2d at 315-17 (Hudson, J., dissenting) (concluding that the North Carolina statutes conflict with federal Medicaid law by allowing the state to recover from a recipient funds that were for purposes other than medical expenses); Andrews, 655 S.E.2d at 445 (Wynn, J., dissenting) (same).
(2)
In determining that N.C. Gen.Stat. § 108A-57(a) complies with Ahlborn by imposing what it regarded as a “reasonable cap” on the state’s lien where recovery for past medical expenses is not expressly allocated, the North Carolina Supreme Court in Andrews relied primarily on a footnote in Ahlborn. See Andrews, 669 S.E.2d at 313 (citing Ahlborn, 547 U.S. at 288 n. 18, 126 S.Ct. 1752). In the opinion of the Court, Justice Stevens was addressing a danger suggested by proponents of full reimbursement that parties would manipulate settlement agreements reducing the allocation to the medical expense component and thereby diminishing the proportional reimbursement to the state. Ahlborn, 547 U.S. at 288, 126 S.Ct. 1752. Justice Stevens pointed out that this risk could be avoided either by obtaining a state’s advance consent to the allocation or by requiring that the allocation be submitted to the court. Id. In footnote 18, Justice Stevens noted that “[a]s one amicus observes, some States have adopted special rules and procedures for allocating tort settlements.... Although we express no view on the matter, we leave open the possibility that such rules and procedures might be employed to meet concerns about settlement manipulation.” Id. at n. 18 (citing Brief of the Association of Trial Lawyers of America as Amicus Curiae in Support of Respondents at 20-21) (hereafter “ATLA Brief’).
We are not persuaded that a mere “reasonable cap” on a state’s recovery from an unallocated lump-sum settlement satisfies the federal anti-lien law as required by Ahlborn. Indeed, contrary to the Andrews court’s reliance on Justice Stevens’s footnote, the ATLA Brief, rather than advocating full recovery subject only to a statutory cap, discussed procedures in several states to have “mini-hearings” to set allocations of proceeds from tort settlements where there is no agreement among the interested parties. Nevertheless, the Supreme Court of North Carolina found that footnote 18 in Ahlborn authorizes the states to mandate full recovery up to a legislatively-determined, across-the-board limit or cap. This reliance is misplaced.
It is also illuminating that the Centers for Medicaid and Medicare Services (“CMS”) issued a memorandum to all Associate Regional Administrators for Medicaid and State Operations in the wake of the Ahlborn decision to aid the states in understanding the effect the decision would have on state third-party liability recovery. See Memorandum from Gale Arden, Director of CMS’s Center for Medicaid and State Operations Disable and Elderly Health Programs Group (DEHPG) to all Associate Regional Administrators for Medicaid and State Operations, “State Options for Recovery Against Liability Settlements in Light of U.S. Supreme Court Decision in Arkansas Department of Human Services v. Ahlborn” (July 3, 2006) (hereafter “CMS Memorandum”). *309 The CMS Memorandum stated that, post Ahlborn, “if a State attempted to recover from more than the portion of a settlement that the parties allocated to medical items and services, it was in violation of the federal anti-lien statute.” Id. Additionally, the CMS Memorandum clarified that, “to the extent State laws permit recovery over and above what the parties have appropriately designated as payment for medical items and services, the State was in violation of federal Medicaid laws.” Id.
To aid states in ensuring compliance with Ahlborn, the CMS Memorandum listed various actions states may and may not take: (1) states may only require assignment of the right to payment from a third party for healthcare (or medical) items and services; and (2) states may not pass or enforce laws which broaden the recovery rights, vis-a-vis Medicaid beneficiaries, of the state Medicaid agency, allowing such agencies to recover from damages other than medical expenses provided for in the award amount, even if this means that Medicaid must forego full recovery of its claim.[11] On the other hand, a state may wish to, inter alia: (1) “enact laws which provide for a specific allocation amongst damage[s], i.e., pain and suffering, lost wages, and medical claims”; (2) “require that cases can only be compromised with the consent of the state”; (3) “pass laws which require a mandatory joinder of a State when a Medicaid lien is at issue”; (4) “strengthen their laws regarding the duty of attorneys to notify and cooperate to include provisions which could render voidable any settlement of which the State was not notified and given an opportunity to present its recovery claim for medical assistance paid.” Id. In addition, the CMS Memorandum emphasized the Ahlborn Court’s admonition that states should become involved in the underlying tort litigation in order to influence the amount that is allocated in a settlement to medical items and services. Id. (stating that “absent such involvement, the Court found little sympathy in the State’s argument that they should be able to recover the total settlement”).
Indeed, in reaction to the Supreme Court’s ruling in Ahlborn, many states that previously imposed statutory caps on Medicaid third-party recovery amended their laws in various ways. Most notably, California changed its laws from imposing a statutory cap of one-half of the recovery to limiting recovery to the portion of the award specifically representing payment for medical expenses or care. Petition for Writ of Certiorari at 20-23, Brown, 129 S.Ct. 2792 (discussing Cal. Welf. & Inst. Code § 14124.76). Prior to Ahlborn, Pennsylvania’s third-party liability statute imposed a fifty percent cap on the state’s recovery. Id. at 23-24 (discussing 62 Pa. Cons.Stat. Ann. § 1409); see infra pp. 310-11 (discussing Tristani, 652 F.3d 360). In the wake of Ahlborn, however, the Pennsylvania legislature enacted 62 Pa. Cons.Stat. Ann. § 1409.1, which provides inter alia that “the court or agency shall allocate the judgment or award between the medical portion and other damages ...” Similarly, Oklahoma amended its statute to provide that the state’s lien extends to the entire settlement, after attorneys fees and costs, unless a more limited allocation of damages to medical expenses is shown by clear and convincing evidence. Brown, 129 S.Ct. at 24 (discussing Okla. Stat. Ann. tit. 63, § 5051.1(D)(1)(d)) (internal quotation marks omitted). Idaho continues to use its pre-Ahlborn statute, which allows for full payment to Medicaid *310 prior to payment of other expenses. Id. at 26-27 (discussing Idaho Code Ann. § 56-209b(6)). Post-Ahlborn, however, this statute has been interpreted to include a rebuttable presumption of such full payment when an allocation is agreed upon by the parties (including the state agency) or is determined through a hearing. Id. at 27 (citing State Dep’t of Health & Welfare v. Hudelson, 146 Idaho 439, 196 P.3d 905, 912 (2008)). States that continue to impose a statutory cap or allow full recovery for Medicaid reimbursements post-Ahlborn include Florida, Georgia, Hawaii, Iowa, and North Carolina. Id. at 17; see Fla. Stat. Ann. § 409.910(1), (4), (6)(a); Ga.Code Ann. § 49-4-149(d); Haw.Rev.Stat. Ann. § 346 — 37(d); Iowa Code Ann. § 249A.6; N.C. Gen.Stat. § 108A-57(a).
(3)
On the basis of Ahlborn’s clear holding that the general anti-lien provision in federal Medicaid law prohibits a state from recovering any portion of a settlement or judgment not attributable to medical expenses, DHHS’s lien on E.M.A.’s settlement proceeds in this case violates federal law. In order to comply with 42 U.S.C. §§ 1396a(a)(18), 1396p, and Ahlborn, North Carolina is free to implement a process by which settlement proceeds are explicitly allocated or otherwise determined. In this case, we must remand for an evidentiary hearing consistent with this opinion to determine the proper amount of the DHHS lien on E.M.A.’s settlement proceeds.
Just as there is insufficient information before this court regarding allocation of the settlement proceeds among various categories of damages, we cannot apply the “proportional analysis” that E.M.A. argues is proper under Ahlborn. As discussed above, the parties in Ahlborn stipulated that the settlement of $550,000 represented only one-sixth of the true value of Ahlborn’s claim, because the settlement was limited due to the amount of insurance available, and determined that the state was thereby entitled to only one-sixth of the stipulated medical expenses. E.M.A.’s settlement is distinguishable in that there was no issue (so far as the record before us shows) of limited insurance and no stipulation. On remand, the district court must determine the true value of the case in allocating medical expenses, but Ahlbom does not mandate such a “proportional analysis,” to use the term that Appellants have coined in their briefing.[12]
In reaching the conclusion we do, we find the Third Circuit’s analysis of the *311 analogous provisions of Pennsylvania law particularly persuasive in our disposition of this appeal. See Tristani, 652 F.3d 360. Although the Third Circuit found that the Pennsylvania statutory presumption that fifty percent of a settlement amount was properly allocable to medical expenditures may be deemed to fall within the acceptable “special rules and procedures” contemplated by Ahlborn in footnote 18, it cautioned the state that it must afford a mechanism permitting beneficiaries to rebut such a presumption,[13] reasoning as follows:
Although the Ahlborn Court acknowledged the existence in state law of “special rules and procedures” for allocating settlements, and left open the possibility that such rules may be employed ,to address concerns about settlement manipulation, 547 U.S. at 288 n. 18, 126 S.Ct. 1752, it did not give states unfettered discretion to allocate settlements without regard to the actual portion aft tributable to medical expenses. Indeed, Ahlborn expressed a preference for resolving allocation disputes “either by obtaining the State’s advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision.” Id. at 288, 126 S.Ct. 1752.
We express no view as to whether allocation disputes of this type must be adjudicated by a court, or may instead be resolved through other “special rules and procedures.” Id. at 288 n. 18, 126 S.Ct. 1752. We hold merely that in determining what portion of a Medicaid beneficiary’s third-party recovery it may claim in reimbursement for Medicaid expenses, the state must have in place procedures that allow a dissatisfied beneficiary to challenge the default allocation. As the Beneficiaries point out, without such a rule nothing would prevent states from allocating 75%, 90% or even 100% of a settlement to medical expenses, thereby eviscerating the rule promulgated by Ahlborn. Because the District Court .concluded otherwise, we will reverse its order in this respect and remand for further proceedings consistent with this opinion.
Id. at 378.
We agree with the reasoning of the Third Circuit and hold that to comport with federal law as interpreted in Ahlborn, under the circumstances in this case, North Carolina’s statutory presumption must be subject to adversarial testing.[14] Under the circumstances of the case before us, absent any state-created mechanism for such testing, it will fall to the district court to conduct the appropriate proceedings.
V
In sum, E.M.A.’s argument that DHHS cannot assert a lien against her portion of *312 the settlement proceeds because a minor has no cause of action for past medical expenses under North Carolina common law fails because the state Medicaid statutes at issue fully abrogate the common law. Nevertheless, we hold that the North Carolina third-party liability statutes, N.C. Gen.Stat. §§ 108A-57 and -59, as applied in this ease, fail to comply with federal Medicaid law as interpreted by the Supreme Court in Ahlborn. As the unanimous Ahlborn Court’s decision makes clear, federal Medicaid law limits a state’s recovery to settlement proceeds that are shown to be properly allocable to past medical expenses. In the event of an unallocated lump-sum settlement exceeding the amount of the state’s Medicaid expenditures, as in this case, the sum certain allocable to medical expenses must be determined by way of a fair and impartial adversarial procedure that affords the Medicaid beneficiary an opportunity to rebut the statutory presumption in favor of the state that allocation of one-third of a lump sum settlement is consistent with the anti-lien provision in federal law.
Accordingly, for the reasons set forth, we vacate the judgment of the district court and remand for an evidentiary hearing at which the district court shall determine the proper amount of DHHS’s Medicaid lien in this case in accordance with Ahlborn and the views expressed in this opinion.

VACATED AND REMANDED

. It is undisputed that DHHS had a right to intervene in the malpractice action but elected not to do so.

. Appellants have abandoned their equal Protection claim.

. While there are a few exceptions to the prohibitions in 42 U.S.C. § 1396p(a) and (b), these exceptions are not relevant to this case.

. As the Third Circuit has pointed out, see Tristani ex rel. Karnes v. Richman, 652 F.3d 360, 368 n. 10 (3d Cir.2011), Ahlborn does not flatly hold that statutory liens such as those created by North Carolina law are permissible. Rather, Ahlborn assumed, without deciding, the propriety of such laws. See id. (“To date, no federal appellate court has ruled on the validity of Medicaid liens limited to medical costs. Numerous district courts and state appellate courts, however, have assumed that such liens are valid in the wake of Ahlborn .... Although these decisions have permitted the use of Medicaid liens limited to medical costs, the majority of them have not clearly articulated their rationale for doing so. *299 Indeed, some courts appear to be under the misapprehension that the Supreme Court held such liens to be permissible in Ahlborn."); see also id. at 379 n. 1 (Pollak, D.J., sitting by designation, dissenting) (“As the majority recognizes, the Supreme Court's decision in Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 280 n. 9, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), assumed without deciding that 'a State can ... requir[e] an “assignment” of part of, or plac[e] a lien on, the settlement that a Medicaid recipient procures on her own.' ”). Appellants have not asserted that the North Carolina lien statute is wholly unenforceable. They limit their challenge to the unrebuttable presumption arising from the statutory one-third provision.

. While the State’s petition for certiorari in Ahlborn was pending in the Supreme Court, the Arkansas Department of Human Services changed its name to "Department of Health and Human Services.” Since the Supreme Court’s decision, the agency has reverted to its original name.

. In connection with their contention that under North Carolina law a minor lacks a cause of action for the costs of medical care, Appellants contend that the Superior Court allocated the settlement proceeds between E.M.A. and her parents, with E.M.A. receiving 88 percent of the total and her parents receiving the remaining 12 percent. Consequently, they contend, the amount of North Carolina's recoverable reimbursement is capped at one- *305 third of the 12 percent of the lump-sum settlement awarded to Sandra and William Earl Armstrong.
The alleged apportionment of 12 percent to Sandra and William Earl Armstrong is not evident from the court’s order, however, and the Secretary takes issue with Appellants’ characterization. See Br. of Appellee at 7 (stating that "[appellants'] assertion contradicts the plain language of the order which provides that the funds be paid either to Medicaid or to the minor plaintiff's special needs trust. The record does not support [appellants’ new apportionment theory.”). In the view we take of the case, we need not further explore this aspect of the parties' contentions.

. The Secretary argues in the alternative that, even if § 108A-57(a) does not abrogate the common law in this case, DHHS has a right to subrogation of E.M.A.’s settlement proceeds because the common law doctrine of necessaries provides that an infant may be liable for necessary medical expenses even though she is living with a parent who has the duty to provide the same when the parent does not so provide. The Secretary argues that this common law doctrine, and not the rule E.M.A. urges, applies in this case. We need not address this argument, however, for as we conclude, the statute does abrogate the common law.

. We further note that in Ezell and Andrews, North Carolina’s appellate courts allowed the state to recover its Medicaid outlays for medical care costs of a tort victim minor suing for birth injuries in a medical malpractice tort action. These post-Ahlborn cases cannot be rationally explained unless the North Carolina courts have determined, implicitly if not explicitly, that the third-party liability statutes abrogate the common law.

. In a post-Ahlbom case presenting an analogous issue, the Supreme Court of Pennsylvania considered whether, under Pennsylvania’s Fraud and Abuse Control Act (which addresses a variety of matters relating to the Medicaid program, including third-party liability), the Pennsylvania Department of Public Welfare could obtain reimbursement for Medicaid expenditures on behalf of a disabled minor where a claim for medical expenses rests with the minor's parents under Pennsylvania common law and the parents' claim was barred *307 by the statute of limitations. E.D.B. ex rel. D.B. v. Clair, 605 Pa. 73, 987 A.2d 681, 682-83 (2009); see id. at 691 (holding that, "pursuant to the Fraud and Abuse Control Act, a Medicaid beneficiary has a cause of action against his or her tortfeasor to recover and reimburse DPW for Medicaid benefits received during the beneficiary’s minority”). We agree with the E.D.B. court that
Common law jurisprudence fails to speak to the central issue in this case. The policy questions that are implicated focus not on parental duty but on protection of the public fisc in the provision of medical assistance to minors whose parents do not have the financial means to do so. The common law is silent as to the provision of medical care to needy minors and does not contemplate state involvement in administering such care. Accordingly, our resolution of the instant case is based on interpretation of the relevant statutory law, which incorporates social welfare developments independent of common law jurisprudence.
Id. at 691 n. 10.

. We observe that the consent language included in the application for benefits executed by Sandra Armstrong would appear to reflect exactly this understanding. Sandra Armstrong agreed
to give back to the State any and all money that is received by me or anyone listed on this application from my insurance company for payment of medical and/or hospital bills for which the Medical Assistance program has or will malte payment. In addition, I agree that all medical payments or medical support paid or owed due to a court order for me or anyone listed on this application must be sent to the State to repay past or *308 current medical expenses paid by the State. This includes insurance settlements resulting from an accident. I further agree to notify the county department of social services if I or anyone listed on this application is involved in any accident.
J.A. 82 (emphases added).

. The unrebuttable presumption created by N.C. Gen.Stat. § 108A-57, in the form of a statutory one-third cap on the state's third-party liability recovery against a Medicaid recipient’s tort settlement, clearly falls into this category.

. In an analogous case arising under post Ahlborn Oklahoma law, the Tenth Circuit has helpfully indicated the kind of considerations that might be salient in assessing the propriety of a particular lien determination:
[A] reduction in a Medicaid lien can be justified only by showing a reason why the plaintiff would agree to allow the defendant to pay less than the full amount of the Medicaid lien. The usual reasons would be that the liability of the settling defendant is uncertain or that the defendant lacks the money to pay for his full liability (or both); so the plaintiff would be willing to take a proportionate reduction in each component of the damages that she would expect the jury to award if the defendant were found liable. For example, if the settlement is for 50% of what the jury is likely to award because there is only a 50% chance that the jury will find liability, the Medicaid lien could properly be cut in half. Or if liability is clear and the expected verdict would be $2 million, but the defendant can pay only $1 million, a 50% reduction would also be in order. A further reduction might also be appropriate if there are doubts about whether the jury would award as damages all the medical expenses paid by Medicaid-because, for example, one could question whether the expenses were caused by the negligent acts of the defendant-although generally one can be more confident of recovering those expenses in full than in *311 recovering, say, the full claim for pain and suffering.
Price v. Wolford, 608 F.3d 698, 707-08 (10th Cir.2010).

. Indeed, the Pennsylvania legislature had amended that state’s law after Ahlborn precisely to provide such a mechanism, there, an administrative hearing. See Tristani, 652 F.3d at 377-78. Nevertheless, the Tristani court was required to address an earlier version of the state law because one of the state claims to reimbursement at issue pre-dated the legislative change. Id.

. Notably, in its opinion in this case, the district court cited, in support of its narrow reading of the Ahlborn holding, the lower court’s decision in Tristani. See Armstrong, 722 F.Supp.2d at 658 (citing Tristani v. Richman, 609 F.Supp.2d 423, 464-65 (W.D.Pa.2009)). But, as just discussed, on appeal, the Third Circuit specifically reversed that portion of the lower court’s judgment in Tristani that had rejected the need for adversary testing of the fifty percent presumption under Pennsylvania law. See 652 F.3d at 378.